UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| HEK, LLC, d/b/a KINNEBERG MANAGEMENT GROUP, | Case No. 21-CV-1380 (NEB/ECW) |
| Plaintiff, | |
| v. | ORDER ON MOTION TO DISMISS |
| VOTUM ENTERPRISES, LLC, MARVIN STUTZ, and MICHAEL MASTRANGELO, | |
| Defendants. | |

This case arises from the business relationship between Plaintiff Kinneberg Management Group ("KMG") and Tri-Coastal Design Group, Inc. ("Tri-Coastal"). KMG was an independent sales representative for Tri-Coastal, and at some point in 2020, Tri-Coastal stopped paying KMG. KMG sued in state court. After the suit was filed, Tri-Coastal's owners abandoned Tri-Coastal and formed Votum. KMG then sued Votum, Marvin Stutz, and Michael Mastrangelo, accusing them of fraud, fraudulent transfer, veil piercing, and civil conspiracy. Defendants removed the action to federal court and now move to dismiss it. (ECF Nos. 1, 12.) For the reasons set forth below, the Court denies the motion.

# BACKGROUND[1]

## I.   Tri-Coastal Business Relationship

Tri-Coastal's owners were Marvin Stutz and Michael Mastrangelo. (ECF No. 1-1 at 4–34 ("Compl.") ¶ 4.) Tri-Coastal sold beauty products, home decor, and novelty products under different brands and names. (*Id.* ¶ 23.) KMG served as Tri-Coastal's Minnesota-based independent sales representative and received commissions when KMG sold Tri-Coastal's products to large retailers. (*Id.* ¶¶ 2, 24.) Tri-Coastal began having financial problems in 2018. (*Id.* ¶ 3.) It did not inform KMG of these problems, and KMG continued to sell Tri-Coastal's products. (*Id.* ¶ 4.) In 2019, Tri-Coastal began missing payments to KMG, and in 2020, it stopped making payments altogether. (*Id.* ¶¶ 5, 49.)

KMG alleges that Tri-Coastal intentionally hid its financial difficulties from KMG. (*Id.* ¶ 52.) In particular, KMG alleges that Mastrangelo assured KMG's CEO that October 2019 commissions of $223,755.96 would be paid by the end of November 2019.[2] (*Id.* ¶¶ 46–47.) KMG continued selling for Tri-Coastal throughout 2020, and Stutz assured KMG that it would be "paid in full." (*Id.* ¶ 58; *see also id.* ¶¶ 56, 60–63, 69–70.) The 2019 and 2020 payments did not come. (*Id.* ¶¶ 49, 74.) When Mastrangelo and Stutz made the assurances about payment, KMG alleges they knew it was unlikely that Tri-Coastal would be able to

---

[1] The Court accepts the factual allegations in KMG's complaint as true, as it must on a motion to dismiss. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820–21 (8th Cir. 2008).

[2] Relevant to personal jurisdiction, the assurance was sent by email, and the CEO's reply included his Minnesota address. (Compl. ¶ 48.)

pay. (*Id.* ¶ 50.) According to KMG, "[i]n reliance on the false statements made by Stutz and Mastrangelo, KMG continued to perform sales representative services for [Tri-Coastal] and did not immediately commence a collections action." (*Id.* ¶ 77.)

KMG sued Tri-Coastal in Minnesota state court ("Tri-Coastal litigation") for breach of contract and unjust enrichment. Tri-Coastal failed to answer, and KMG obtained a default judgment of $829,837.26. (*Id.* ¶ 6; ECF No. 26 ("Pl. Br.") at 35.) On August 24, 2020, after being served with the Tri-Coastal litigation and without notice to KMG, Tri-Coastal claimed it had entered into a peaceful possession agreement with a bank (IDBNY)[3] and refused to pay the default judgment. (Compl. ¶¶ 7, 81.) Tri-Coastal sent a letter to some Tri-Coastal suppliers explaining the liquidation process and the agreement with IDBNY, but it did not send a copy to KMG. (*Id.* ¶¶ 83–84.) Tri-Coastal's lawyer told KMG in an email that Tri-Coastal was "out of business." (*Id.* ¶ 85.)

## II. Creation of Votum

Following the peaceful possession agreement, the owners of Tri-Coastal created a new entity, Votum. (*Id.* ¶ 89.) Votum is a New Jersey LLC with two members: the Cocobu

---

[3] According to the Defendants, the "peaceful possession" occurred when a Tri-Coastal creditor, Israel Discount Bank of New York ("IDBNY"), "foreclosed on (*i.e.*, took ownership and possession) *all* of TCD's assets." (ECF No. 14 ("Def. Br.") at 5 (citing Compl. ¶¶ 81, 83).) The Court is not analyzing the peaceful possession's veracity at this litigation stage.

Irrevocable Trust and the Prego Irrevocable Trust.[4] (ECF. No. 21 ¶ 12.) Stutz and Mastrangelo retain an interest in Votum that is similar to their interest in Tri-Coastal. (Compl. ¶¶ 90–100.)

KMG alleges that Votum received money from Tri-Coastal and that it sells many of the same Tri-Coastal products through the same retail channels, using Tri-Coastal's trademarks. (*Id.* ¶ 8.) Between September 30, 2020, and the date the complaint was filed, Tri-Coastal's IDBNY bank statement shows at least 30 debits with "Votum" references in the descriptions—occurring while Tri-Coastal claimed to be insolvent. (*Id.* ¶¶ 9, 126.) Many of the expenses suggest Tri-Coastal was paying Votum payroll and other expenses. (*Id.* ¶¶ 104, 126, 128.) For example, Tri-Coastal made a $23,100 payment to Aetna Life Insurance for a "benefit expense." (*Id.* ¶ 103.) KMG claims this payment was for Stutz's and Mastrangelo's life insurance. (*Id.*) Tri-Coastal also made $100,000 payments directly to Stutz and Mastrangelo a few weeks before entering the peaceful possession agreement. (*Id.* ¶ 104.)

After the peaceful possession, Votum took over Tri-Coastal's business, hired its employees, sold its products, and took over Tri-Coastal's Amazon.com and Walmart.com

---

[4] The Cocobu trust trustee is Mark Linder, who is domiciled in California. (ECF No. 21 ¶ 12(a).) The trust beneficiaries are Grace, McKenna, Harrison, and Madeline Stutz. (*Id.*) Grace, McKenna, and Harrison are domiciled in California. (*Id.*) Madeline is domiciled in Oregon. (*Id.*) The Prego trust trustees are Beth Mastrangelo, who is domiciled in New Jersey, and Tedd S. Levine and Carmel Pedatella, who are domiciled in New York. (*Id.* ¶ 12(b).) The trust beneficiaries are Beth, Michael Paul, and Matthew John Mastrangelo, who are all domiciled in New Jersey. (*Id.*)

seller profiles. (*Id.* ¶¶ 106–14.) Votum sells some products with seals that only Tri-Coastal had approval to use, and Votum uses other Tri-Coastal intellectual property and Tri-Coastal client relationships to manufacture and sell items. (*Id.* ¶¶ 117, 123, 124.) KMG claims that Votum has not paid Tri-Coastal for the use of its intellectual property. (*Id.* ¶ 121.)

### III.   Procedural History

KMG sued Votum, Stutz, and Mastrangelo in Minnesota state court for fraudulent transfer, fraud, successor liability, veil piercing, and civil conspiracy. (*Id.* ¶¶ 132–82.) Defendants removed the case to this Court and now moves to dismiss this action claiming a lack of personal jurisdiction, *res judicata*, and failure to state a claim. (ECF Nos. 1, 12.) Because the Court finds Defendants' arguments unavailing, it denies the motion to dismiss.

## ANALYSIS

### I.   Materials Outside the Pleading

As an initial matter, Defendants ask the Court to consider materials outside the pleading to rule on its motion. The Court generally cannot "consider materials outside the pleadings when deciding a motion to dismiss for failure to state a claim." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015). But it may consider "some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Id.* (citation omitted). Defendants asks the Court

5

to consider (1) its memorandum in support of a motion to dismiss filed in a similar New Jersey case and (2) the public filings from the Tri-Coastal litigation. (Def. Br. at 3–4.) The Court will consider these court documents because they are public records and do not contradict the complaint. *Greenman*, 787 F.3d at 887. Defendants also ask the Court to consider the peaceful possession documents.[5] The Court will consider these documents in determining personal jurisdiction. *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020) (stating that courts "may look beyond the pleadings to determine whether personal jurisdiction exists, including reviewing affidavits and other exhibits"). But the Court will view the documents in the light most favorable to KMG because it has not held an evidentiary hearing to resolve disputed facts. *Id.*

## II.  Personal Jurisdiction

Defendants first move to dismiss KMG's claims for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). To survive a Rule 12(b)(2) motion, KMG must make a prima facie showing that personal jurisdiction exists "by pleading sufficient facts to support a reasonable inference that [Defendants] can be subjected to jurisdiction within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (quotation

---

[5] These documents include the "Peaceful Possession of Collateral" letter from Tri-Coastal to IDBNY, (ECF No. 15-3), the Secured Party Bill of Sale between IDBNY and Take Project S.r.l., (ECF No. 15-4), an Italian translation of the bill of sale, (ECF No. 15-5), the "Secured Party Sale" letter agreement from IDBNY to Tri-Coastal and the individual defendants, (ECF No. 15-6), Votum's certification of formation, (ECF No. 15-7), and Votum's operating agreements, (ECF Nos. 15-8, 15-9).

marks and citation omitted). The Court properly asserts jurisdiction over a nonresident defendant if personal jurisdiction exists under the forum state's long-arm statute and the exercise of personal jurisdiction is consistent with due process. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010). Because Minnesota's long-arm statute permits the Court to exercise personal jurisdiction to the full extent of due process, the only question is whether exercising personal jurisdiction over Defendants offends due process. *Pederson*, 951 F.3d at 980. Due process requires that a nonresident defendant have sufficient minimum contacts with the forum state such that exercising jurisdiction over him does not offend "traditional notions of fair play and substantial justice." *Wells Dairy*, 607 F.3d at 518.

At issue is whether the Court has specific jurisdiction over Defendants Votum, Stutz, and Mastrangelo.[6] The Eighth Circuit has set forth the following five-factor test to analyze whether a court can exercise specific jurisdiction over a nonresident defendant:

> (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the

---

[6] KMG does not argue that the Court has general jurisdiction over Defendants, nor could it. Votum is a citizen of California, New Jersey, New York, and Oregon. (ECF No. 21 ¶ 12); *see OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) (holding that for diversity jurisdiction, citizenship of LLC is that of its members); *see Moris v. Chrysler Grp., LLC*, No. 14-CV-4981 (SRN/SER), 2015 WL 2373457, at *5 (D. Minn. May 18, 2015) (finding that a trust's citizenship is that of its beneficiaries). And neither Stutz nor Mastrangelo is domiciled in Minnesota. (Compl. ¶¶ 18–19); *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("[T]he paradigm forum for the exercise of general jurisdiction is the individual's domicile.").

7

interest of the forum state in providing a forum for its residents; and (5) [the] convenience of the parties.

*Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 619 (8th Cir. 2021) (citation omitted). Of these, the first three are afforded greater weight. *Id.* at 620 (citation omitted).

The Court evaluates specific jurisdiction for the fraud claim by reference to the "effects test." *Id.* (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Under the effects test, "[p]ersonal jurisdiction can exist over a nonresident defendant who commits an intentional tort when its effect is felt primarily within the forum state." *Id.* (citing *Pederson*, 951 F.3d at 981). The proper question for specific jurisdiction "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* (citation omitted). "Each defendant's contacts with the forum State must be assessed individually." *Calder*, 465 U.S. at 790.

### A. *Votum*

The Court has personal jurisdiction over Tri-Coastal's successor just as it would over Tri-Coastal.[7] *ResCap Liquidating Tr. v. LendingTree, LLC*, No. 19-CV-2360 (SRN/HB),

---

[7] The parties do not contest this Court's jurisdiction over Tri-Coastal, nor could they. The Complaint alleges that Tri-Coastal purposely directed its activities at KMG—a Minnesota resident. (Compl. ¶ 20.) And through their business relationship, Tri-Coastal made substantial profits. *See Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432-34 (8th Cir. 1995) (holding personal jurisdiction due process requirements were satisfied where defendant actively pursued a business relationship with plaintiff and a contract was subsequently consummated). The business relationship and the injuries resulting from it are the basis for the current litigation, and Minnesota has a strong interest in preventing the alleged wrongdoing. *E.g., Kopperud v. Agers*, 312 N.W.2d 443,

2020 WL 1317719, at *8 (D. Minn. Mar. 20, 2020) ("Well-pleaded allegations of successor liability can establish personal jurisdiction.") (collecting cases). The Court has personal jurisdiction over Votum if Votum is the successor liable for Tri-Coastal's debts. *Id.* This occurs if Votum fraudulently transferred Tri-Coastal's assets to itself. *Schwartz v. Virtucom, Inc.*, No. A08-1059, 2009 WL 1311816, at *3 (Minn. Ct. App. May 12, 2009) ("A company may be held liable for the debts and liabilities of a judgment debtor if the debtor's assets are fraudulently transferred to the company in order for the debtor to escape liability for such debts."). The complaint alleges dozens of instances in which funds were fraudulently transferred from Tri-Coastal to Votum.[8] (Compl. ¶¶ 125–31.)

For example, KMG alleges that Votum is funded, at least in part, by transfers from Tri-Coastal's bank account and that such amounts were used for Votum's expenses. (*E.g.*, *id*. ¶¶ 21, 126, 157.) KMG also pleads that Tri-Coastal transferred its intellectual property to Votum, including the rights to its Amazon.com and Walmart.com seller pages so that Votum could continuing selling Tri-Coastal's products. (*Id.* ¶¶ 107–09, 119–21, 158.) In essence, KMG argues that Votum took over Tri-Coastal's business by hiring Tri-Coastal's

---

445 (Minn. 1981) (finding defendant "purposefully availed himself of [Minnesota] to carry out a scheme to defraud investors").

[8] Votum argues the complaint demonstrates that no fraudulent transfer occurred because the transfers occurred after the peaceful possession. (ECF No. 28 ("Def. Reply") at 5.) At this point in the litigation, the Court takes the factual allegations in the complaint as true. *Aten*, 511 F.3d at 820–21. Nothing in the complaint or Defendants' peaceful possession documents suggest that the peaceful possession's timing precluded Votum's ability to fraudulently transfer Tri-Coastal's assets.

9

employees, selling its products, and using its contacts—all without adequate compensation. (*Id.* ¶¶ 106–15.) These facts are sufficient to allege Defendants fraudulently transferred Tri-Coastal's assets. The Court thus has jurisdiction over Votum for the same reasons it would have jurisdiction over Tri-Coastal. *ResCap*, 2020 WL 1317719, at *8.

## B. Stutz and Mastrangelo

*Piercing the Corporate Veil.* As noted above, it is undisputed that the Court would have personal jurisdiction over Tri-Coastal. And if Tri-Coastal is Stutz's and Mastrangelo's alter ego, "its contacts are [theirs] and due process is satisfied." *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634, 637 (8th Cir. 1975). The Court has jurisdiction over Stutz and Mastrangelo because KMG has adequately pled that they disregarded Tri-Coastal's corporate formalities such that the Court should pierce the corporate veil and find them personally liable. *Id.* at 638 ("[W]here a corporation is the alter ego of the stockholders so as to justify disregard of the corporate entity[,] jurisdiction over the corporation will support jurisdiction over the stockholders.").

Under Minnesota law, courts use a balancing test to determine whether a defendant disregarded the formalities of corporate existence.[9] *Victoria Elevator Co. of*

---

[9] KMG notes that Tri-Coastal is a New Jersey corporation. (Pl. Br. at 17 n.3.) Defendants and KMG analyze veil-piercing under Minnesota law, and New Jersey veil-piercing law is substantively similar to Minnesota law. *Compare SSC Serv. Corp. v. Turen*, No. 2:15-CV-4160-KM-MAH, 2020 WL 999709, at *4 (D.N.J. Mar. 2, 2020), *with Victoria*, 283 N.W.2d at 512.

10

*Minneapolis v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn. 1979). Courts consider: (1) "insufficient capitalization for purposes of corporate undertaking"; (2) "failure to observe corporate formalities"; (3) "nonpayment of dividends"; (4) "insolvency of debtor corporation at time of transaction in question"; (5) "siphoning of funds by dominant shareholder"; (6) "nonfunctioning of other officers and directors"; (7) "absence of corporate records"; and (8) "existence of corporation as merely facade for individual dealings." *Id.* In addition to a number of these factors, "an element of injustice or fundamental unfairness" must be present to warrant piercing the corporate veil. *Id.*

KMG adequately pled that Stutz and Mastrangelo siphoned Tri-Coastal funds by transferring Tri-Coastal funds to themselves and to Votum. (Compl. ¶¶ 8–10, 12–15, 104, 126–31, 172–73.) The complaint also alleges Stutz's and Mastrangelo's failure to observe corporate formalities by using Tri-Coastal's funds, trademarks, goodwill, and business contacts to benefit Defendants. (*Id.* ¶¶ 9, 104, 106–31, 175.) Further, the complaint provides that Tri-Coastal was insufficiently capitalized and insolvent at the time. (*Id.* ¶¶ 11, 65, 126, 169–71.) At base, KMG asserts that Tri-Coastal is merely a façade for the individual dealings of Stutz and Mastrangelo. (*Id.* ¶¶ 130, 172, 174.) Thus, KMG has pled more than enough factors to sufficiently allege Stutz and Mastrangelo disregarded the formalities of Tri-Coastal's corporate existence such that it "cannot be allowed to shield [them] from liability for damages incurred by those dealing with the corporation." *Victoria*, 283 N.W.2d at 512.

Moreover, KMG has pled facts which, if true, show that failing to respect Tri-Coastal's corporate form would lead to injustice and fundamental unfairness. *Id.* Stutz and Mastrangelo may conduct business through a corporate form to limit their individual liability; "it is, in fact, one purpose for incorporating." *Id*. But Stutz and Mastrangelo are prohibited from using the corporate form as a shield while also disregarding the corporate existence when beneficial. *Id.* And the complaint adequately alleges that both Stutz and Mastrangelo have unjustly and unfairly disregarded Tri-Coastal's corporate form. *Id.* For this reason, the Court has jurisdiction over Stutz and Mastrangelo as it would Tri-Coastal.

*Fraud.* The Court also has jurisdiction over Stutz and Mastrangelo because KMG adequately pled that they committed fraud directed into Minnesota and caused harm in this state. *Calder*, 465 U.S. at 789, 791 (holding jurisdiction in California over nonresident defendants was proper when "intentional, and allegedly tortious, actions were expressly aimed at California" and the "intentional conduct in Florida calculated to cause injury to respondent in California").

In Minnesota, a "representation is made with fraudulent intent when it is known to be false or, in the alternative, when it is asserted as of the representer's own knowledge when he or she does not in fact know whether it is true or false." *Florenzano v. Olson*, 387 N.W.2d 168, 173 (Minn. 1986). Stated simply, Stutz and Mastrangelo committed fraud in

12

Minnesota if they made representations and knew or believed "that the matter [was] not as [they] represent[ed] it to be." *Id.*

The complaint alleges that Stutz and Mastrangelo knowingly made false statements in emails and phone calls to induce KMG to continue providing Tri-Coastal services and to stave off KMG filing a lawsuit.[10] (Compl. ¶¶ 56–67, 69–70.) And the complaint provides that Stutz and Mastrangelo knew KMG was in Minnesota and that their communication was directed to Minnesota. (*Id.* ¶¶ 47–48, 51, 57, 68.)

Moreover, the complaint's allegations demonstrate that Stutz and Mastrangelo both connected themselves to Minnesota in a "meaningful way." *Rutledge*, 9 F.4th at 620. If true, Stutz's and Mastrangelo's alleged fraud would enable them to reap benefits of selling products in Minnesota, and the effect of the alleged fraud would have been "felt primarily within" the state. *Id.* Defendants argue *Johnson v. Arden* bars the Court's jurisdiction over Stutz and Mastrangelo. 614 F.3d 785 (8th Cir. 2010); (Def. Reply at 12 (citing *id.*).) Under *Johnson*, KMG must show Stutz and Mastrangelo "knew that the brunt

---

[10] Defendants contend that the telephone and email contact cannot support personal jurisdiction. (Def. Reply at 13 (citing *Greenbelt Res. Corp. v. Redwood Consultants, LLC*, 627 F. Supp. 2d 1018, 1026 (D. Minn. 2008) ("Letters, e-mails, faxes and telephone contacts may, in conjunction with other contacts, support the exercise of personal jurisdiction, but such contacts alone are insufficient to satisfy due process.").) Although email and telephone communications "do not themselves establish jurisdiction, they may be used to support the exercise of personal jurisdiction." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 980 (8th Cir. 2015) (internal quotations and citation omitted).

13

of [its] injury would be felt" in Minnesota and that they "intentionally targeted the forum state." 614 F.3d at 796 (quotation marks and citations omitted). KMG has met this burden.

The five-factor personal jurisdiction analysis of the fraud claim also supports the Court's jurisdiction over Strutz and Mastrangelo. Stutz's and Mastrangelo's alleged intentional torts were calculated to cause injury in Minnesota, and through their fraud, Tri-Coastal allegedly secured substantial profit from KMG's services. (Compl. ¶ 52.) In 2020 alone, the complaint asserts that KMG arranged for $9,361,242 of sales for Tri-Coastal. (*Id.* ¶ 74.) The alleged fraud directly relates to the cause of action, and again, "Minnesota has an obvious interest in providing a forum since Minnesotans were defrauded." *Kopperud*, 312 N.W.2d at 445. Because the balance in favor of jurisdiction outweighs any resulting inconvenience of this forum, this Court has jurisdiction over Stutz and Mastrangelo.[11]

### III.   *Res Judicata*

*Res judicata* is an absolute bar to a subsequent claim if "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." *Hauschildt v. Beckingham*, 686

---

[11] KMG also argues this Court has personal jurisdiction over Defendants because KMG has adequately pled that they participated in a tortious conspiracy. (Pl. Br. at 32–33.) Since the Court finds personal jurisdiction on other grounds, the Court need not reach this argument.

14

N.W.2d 829, 840 (Minn. 2004). "The common test for determining whether a former judgment is a bar to a subsequent action is to inquire whether the same evidence will sustain both actions." *Id.* at 840–41 (quotation marks and citation omitted). But *res judicata* does not apply simply because *some* evidence overlaps. *Id.* at 841. Defendants bear the burden to prove *res judicata* applies. *Barth v. Stenwick*, 761 N.W.2d 502, 508 (Minn. Ct. App. 2009) ("The party invoking collateral estoppel has the burden of proof.").

*Res judicata* is inapplicable to this action because the Tri-Coastal litigation involved claims for breach of contract and unjust enrichment whereas the current action is for fraudulent transfer, fraud, successor liability, veil piercing, and civil conspiracy. Although some of the evidence between the two actions overlaps—specifically the underlying amounts Tri-Coastal owes KMG—these are two distinct actions.

Indeed, in a similar case, *res judicata* did not apply to a subsequent fraud claim even though the plaintiffs initially filed an action for breach of contract with no allegations or evidence of fraud. *Great Plains Educ. Found., Inc. v. Student Loan Fin. Corp.*, 954 N.W.2d 844, 851 (Minn. Ct. App. 2020). When the plaintiffs later filed a fraud action against the same defendants, the plaintiffs were not precluded from bringing the second action because they did not know about the fraud until after the breach of contract action settled. *Id.* at 851–52; *see also McDonald v. Johnson & Johnson*, 776 F.2d 767, 770 (8th Cir. 1985) ("[C]ourts agree that fraud in inducing a contract and a later breach of that contract represent two distinct causes of action under Minnesota law.").

15

KMG is not precluded from bringing the current action because it was unaware of the underlying events leading to this case when it filed the Tri-Coastal litigation.[12] (Pl. Br. at 39.) Defendants contend this suit is barred because the claims involve the same parties and because there was a judgment in the Tri-Coastal litigation. (Def. Br. at 17–22.) But the claims involve different factual circumstances,[13] and KMG has not had a full and fair opportunity to litigate these claims. *See Hauschildt*, 686 N.W.2d at 840. Thus, *res judicata* is inapplicable.

## IV. Failure to State a Claim under Rule 12(b)(6)

Defendants last argue that KMG's complaint should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure because (1) KMG did not properly plead its successor liability claim, and (2) the veil-piercing allegations against Stutz and Mastrangelo are implausible.[14] (Def. Br. at 24–28.) Rule 12(b)(6) requires that the Court dismiss a complaint for failure to state a claim upon which relief can be granted if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[12] As KMG explains, post-judgment discovery following the Tri-Coastal litigation revealed the transfers between Tri-Coastal and Votum at issue. (Pl. Br. at 39.)

[13] Defendants assert both suits involve the commission owed to KMG, but this argument demonstrates a misunderstanding of the current action. (Def. Br. at 18–20.)

[14] Defendants do not argue that KMG failed to state a claim under Rule 12(b)(6) for its fraud, fraudulent transfer, and civil conspiracy claims.

In reviewing Defendants' Rule 12(b)(6) motion, the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the KMG's favor. *Aten*, 511 F.3d at 820–21. The complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Thus, where a complaint alleges "facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

Defendants assert that KMG has not sufficiently alleged facts to demonstrate that Votum purchased substantially all of Tri-Coastal's assets and thus does not satisfy the Rule 12(b)(6) requirements for the successor liability claims. (Def. Br. at 24–25.) This argument fails because, as the Court noted above, KMG sufficiently alleged successor liability based on fraudulent transfer.

Defendants also argue that KMG's veil-piercing claim against Stutz and Mastrangelo is implausible. (*Id.* at 26–28.) In support, Defendants present the peaceful possession documents to undermine KMG's allegations. (*Id.* at 27–28.) But the Court will not consider these documents under the Rule 12(b)(6) standard because they are neither

17

public documents nor documents embraced by the pleadings. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Thus, the Court rejects this argument.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, Defendants' motion to dismiss (ECF No. 12) is DENIED.

Dated: February 3, 2022    BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge